Case is In Re Branded, 2018-18-28. Mr. Furrer. May it please the court. This case involves the registration of the mark tweeds for shirts and sweaters. The board and examiner found the mark to be generic. The board has a burden of proof to buy marks to be generic by clear and convincing evidence. Applicant believes that this was not properly founded. Applicant originally had registered tweeds in 1987. A long time use mark. It was abandoned inadvertently through a mistake. Is genericness a question of fact? Excuse me? Is genericness a question of fact? I do not believe so, your honor. I don't think so. I don't think we owe any deference to the board. We always deserve deference to the board, your honor. They are the experts. We're arguing in this situation that they didn't properly find the finding of genericness. My problem is with the record that you presented. I mean, you didn't provide any evidence to rebut the board's dictionary definitions of tweeds. You didn't submit any evidence that rebutted the board's reference to competitor use of the mark and the concepts. So what are we supposed to do with that? It's really just an absence of proof, isn't it? Well, your honor, it's well known even in the definitions that tweeds is more known for suits and suits. Tweed suits, not for shirts and sweaters. There is no genus between the term tweeds and shirts and sweaters. They were shirts and sweaters were made out of tweeds or tweed-like fabric, right? There is an evidence of some, but a lot of the evidence is based on non-U.S. findings. So, and that doesn't necessarily mean that people, the general public, was going to associate tweeds with shirts and sweaters, your honor. But I mean, I don't disagree that usually sweaters aren't made of tweed, you know, unless you live in a crazy cold environment like, you know, some of the European countries. But you didn't disclaim sweaters made of tweed. You just said for use in sweaters. I mean, there are sweaters that are made from tweed. Maybe not the most comfortable ones, but they are. In the record, yes, the examiner did find that. Like I said, we don't think that associates a genus or excludes a finding of tweeds to be more a generic term or mark. I mean, more of a descriptive term or mark and not generic. Please skip that generic conversation. We believe the examiner was proper in their initial finding that tweeds for this mark was descriptive and based on the applicant's long-term use of the mark that it's acquired secondary meaning. Did you present evidence of secondary meaning? We produced the evidence of the long-term usage, your honor, of the fact that it was registered since 1987, registered for over 31 years before it through inadvertently was abandoned. And so what and then, but you say somehow it's still relevant, even though it was abandoned. Can the board really consider it once it's abandoned? Yes, because it's prior history. Okay, but you're not saying that it somehow creates a presumption. I would argue that it does somehow create a presumption. It's been in the rulings that... Well, in Cordova, we said that that's not the case. I mean, it was similar in that respect there. Excuse me, your honor? Cordova. Yes, your honor. Yeah. Resolves this question against you, right? I love the Cordova case. I would argue that this is different, but I understand your argument. Yes, your honor. You seem not to want to follow precedent. I note the PTO says whether a proposed mark is generic is a question of fact in the Nordic naturals. Is that not what Nordic naturals holds? Yes, your honor. And haven't we said the same thing? Yes, your honor. Okay. Yes, your honor. We're just arguing that based on the long-term usage and the fact that the genus does not... And the general public is not going to associate tweeds with shirts and sweaters. And that distinguishes it from the prior... I want to say prior art. I'm too used to talking trademark terms from the prior record. So what evidence did you present on secondary meaning? We presented the evidence of the prior registration mark, your honor. But there was no survey evidence. There was no advertising materials. You just didn't submit any. No, your honor. And that's the way one would do it. For example, there was a survey showing that X percent of people understood tweeds to mean shirts and sweaters. Yes, your honor. I understand. Not fair. I understand. But as I said, we would argue that it has acquired distinguishedness based on its long-term usage. Based on the use of the prior mark, which did have many renewals with proof of usage. We understand your point. Thank you, your honor. Any other thoughts, arguments? As I said, I just would like to review the fact that we do not believe that it's genius with shirts and sweaters. The public would not recognize that as such. Well, but Perdua and Royal Crown both said that it doesn't have to be generic for the entire genus, as long as the public would understand it to be generic for some subset of that genus. And even if you weren't aiming for that subset, that still shows what the public would understand, right? Right, your honor, but I don't think that they would understand this as a subset. You have a basic argument that tweed doesn't necessarily mean shirts and sweaters. I have a tweed jacket. Yes, your honor. But you've got the standard of review here. And the PTO did provide samples showing tweed shirts and sweaters. Yes, your honor. I would argue many of those samples are non-U.S. and that it's not a greatly widely known as by the public. There may be a specific example here and there, but those are limited, your honor. Shall we save the rest of your time for rebuttal? Yes, your honor. I appreciate your time. Professor Grandy. Good morning, your honors. May it please the court. Just a couple of points I want to pick up on on the appellant's argument. First of all, the TTAB specifically excluded the foreign websites that were in the record. It did so at page 8 of the record, appendix 8, footnote 20. So then what was left with respect to evidence of tweed sweaters? There were a lot of, as we pointed out in a brief, there were a lot of websites that were U.S. websites that showed use by competitors of tweed shirts and tweed sweaters as the kind of thing that was being offered on their websites. But none of them just say tweeds. They always have shirt or sweater attached as if they weren't generic. Right. There were dictionary definitions from Merriam-Webster and the Oxford Dictionary as well that showed that the plural tweeds is defined by the public as clothes made out of tweed fabric. And these are just a subset of clothes made out of tweed fabric. And these websites show that, in fact, the word tweed has the same meaning when referring to sweaters and shirts. But you can see that the use of tweed fabric for sweaters and shirts, it's extremely limited. It's not like the normal person goes out looking for a tweed sweater or a tweed shirt, right? Apparently they do. Tweed jackets, yes. Based on what's in this record, it appears that they do, that there are tweed shirts and tweed sweaters offered to the public. That's really the only evidence of that in this record is what the examining attorney put in. There is no countervailing evidence. There was, in fact, a mark that was granted for this that existed for a long time, right? Yes. And do you put any weight on the fact that the cancellation was due to inadvertence? No. The fact that it, first of all, even if it were a live and existing registration, it would have no impact on this case. Because every time we get an application, we have to review it for all of the statutory requirements. The Cordua case basically takes care of the entire argument that the appellant is making about any effect that the prior registration would have. But it would have some registration with respect to the question of if it had secondary meaning, with respect to secondary meaning. Potentially it would, yes. But there is no question of secondary meaning in this particular case because, A, the only issue is genericness. And, B, they amended to try to seek registration not on the principal register but on the supplemental register. And that basically took secondary meaning out of the case, even if it would have been in there to begin with. If there are no further questions that Your Honors have, I'll give back the rein. Thank you. Mr. Furr has some rebuttal time. Yes, Your Honor. Applicant would argue that the long-term registration should be given some definite, at least to show that the public is aware of tweeds based on the applicant's usage in the marketplace. But there's no secondary meaning issue, right? Applicant moved the request to supplemental register based on the request from the examiner. The examiner did not raise the issue of genericness until after the applicant followed the examiner's request to move to the supplemental register. So, applicant argues that basically some deference should be given to the prior registered mark. It was a 31-year-old mark to show usage and to show that it is not generic. But why couldn't you have put some evidence in of that 31 years of usage? Well, clearly you could have. Why didn't you? Based on what you get from the client. Okay. Sorry, Your Honor, I don't... No, I get it. Okay. I would like to say that it's an honor to argue before this court. The opposing counsel has been very professional, outstandingly professional. Your clerk's court's office is fantastic. This is my first experience here, so I do appreciate that. I do ask that you find that the first ruling of the examiner that it was descriptive was correct based on long-term usage and the prior registration. I appreciate your time. As I said, it's been an honor. Thank you, Mr. Furrow. We'll consider your arguments and cases submitted.